1
2
3
4
                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
5
6
7   JOSEPH A. KAUFMAN, M.D.,              )      2:06-CV-00621-ECR-LRL
                                          )
8           Plaintiff,                    )      <u>**Order**</u>
9                                         )
    vs.                                   )
10                                        )
    UNUM LIFE INSURANCE COMPANY OF        )
11  AMERICA, a Maine corporation,         )
                                          )
12          Defendant.                    )
    _____)
13                                        )
    UNUM LIFE INSURANCE COMPANY OF        )
14  AMERICA, a Maine corporation,         )
                                          )
15          Counterclaimant,              )
    vs.                                   )
16                                        )
    JOSEPH A. KAUFMAN, M.D.,              )
17                                        )
            Counterdefendant.             )
18  _____)
19
20       This action arises out of a dispute over an ERISA plan
providing long-term disability benefits.  Now pending are a motion
21
for summary judgment (#55) filed by Defendant, and a cross-motion
22
for summary judgment (#64) filed by Plaintiff.  The motions are
23
ripe, and we now rule on them.
24
25
                **I. Factual and Procedural Background**
26
         Plaintiff Joseph A. Kaufman, M.D. ("Kaufman") worked as a
27
cardiologist until 1998, when he suffered orthopaedic and
28

1  neurological injuries which have prevented him from working as a
2  cardiologist.  (Second Am. Compl. ¶ 9 (#18).)  Since the injuries,
3  Kaufman has worked in an administrative position.  (Id.)  Kaufman
4  was insured under a long-term disability benefits plan ("the Plan")
5  issued by Defendant Unum Life Insurance Company of America ("Unum").
6  (Id. ¶ 6-8.)  The Plan is an employee welfare benefit plan governed
7  by the Employee Retirement Income Security Act of 1974 ("ERISA").
8  (D's Mot. for Summary Judgment at 2 (#55).)  Kaufman submitted a
9  claim to Unum for long-term disability benefits.  (Second Am.
10  Compl. ¶ 10 (#18).)  Unum determined that Kaufman was eligible for
11  benefits, with certain reductions pertaining to his current
12  earnings.  (D's Mot. for Summary Judgment at 2 (#55).)  Unum
13  terminated all benefit payments when Kaufman's income reached eighty
14  percent of Kaufman's pre-disability income.  (Id.)  Unum also
15  determined that there had been an overpayment of benefits due to
16  errors in Kaufman's reported income.  (Id.)  Kaufman disputes that
17  there was any overpayment, and claims that his benefits should never
18  have been reduced by his post-disability income under the terms of
19  the long-term disability plan issued by Unum.  (Second Am. Compl. ¶
20  11 (#18).)

21       On April 13, 2006, Kaufman sued Unum in Clark County, Nevada.
22  On May 18, 2006, Unum removed (#1) the action from the Clark County
23  Nevada District Court to the United States District Court for the
24  District of Nevada.  On May 11, 2007, Kaufman filed an amended
25  complaint (#11), along with the Cardiovascular Center of Southern
26  Nevada Long Term Disability Plan as an additional plaintiff.  On May
27  25, 2007, Unum filed its answer (#12) to the amended complaint

28

1 (#11), with counterclaims for equitable restitution and unjust
2 enrichment for the amount of the allegedly overpaid benefits.   On
3 September 14, 2007, Kaufman filed his second amended complaint
4 (#18), along with a stipulation that all claims of the
5 Cardiovascular Center of Southern Nevada Long Term Disability Plan
6 were being dismissed with prejudice.   On October 4, 2007, Unum filed
7 its answer (#21) to the second amended complaint (#18).

8        On September 10, 2010, Unum filed its motion for summary
9 judgment (#55).   On November 5, 2010, Kaufman filed his response and
10 cross-motion for summary judgment (##63, 64) to Unum's motion for
11 summary judgment (#55).   On December 3, 2010, Unum filed its reply
12 (#67) in support of its motion for summary judgment (#55) and
13 response (#68) to the cross-motion for summary judgment (#64).   On
14 December 17, 2010, Kaufman filed a reply (#69) in support of his
15 cross-motion for summary judgment (#64).   On January 31, 2011, Unum
16 filed a notice of supplemental authority (#70) relating to its
17 motion for summary judgment (#55).   On February 3, 2011, Kaufman
18 filed his response (#71) to Unum's notice of supplemental authority
19 (#70).   On July 5, 2011, Kaufman filed a notice of supplemental
20 authority (#74).   On July 7, 2011, a hearing was held on the motion
21 for summary judgment (#55) and the cross-motion for summary judgment
22 (#64).

23

24                    **II. Standard of Review**

25     **A. Legal Standard for Summary Judgment**

26     Summary judgment allows courts to avoid unnecessary trials
27 where no material factual dispute exists.   N.W. Motorcycle Ass'n v.

28                              3

U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  FED. R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

4

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. Id. Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. Id.

**B. Standard of Review for Cases Arising Under ERISA**

The applicable standard of review of ERISA disability benefits is de novo unless the plan gives the administrator discretionary authority to determine eligibility for benefits, in which case the more deferential abuse of discretion standard applies. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). However, when the plan gives discretion to an administrator who "operate[s] under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" Id. (quoting

1  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 103 (1989).

2  In this case, while the Plan gives Unum discretionary authority as

3  the administrator, Unum is also the insurer of the Plan, creating a

4  conflict of interest which we must consider when evaluating Unum's

5  determinations regarding Kaufman's benefits.  See id.  However, a

6  court "may not merely substitute [its] view for that of the fact

7  finder," and should consider whether the plan administrator acted

8  illogically, implausibly, or without support in inferences that

9  could reasonably be drawn from facts in the record.  Salomaa v.

10 Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011).

11     When interpreting terms in an ERISA plan, "the starting point

12 is the wording of the plan."  Abatie v. Alta Health and Life Ins.

13 Co., 458 F.3d 955, 963 (9th Cir. 2006).  "When disputes arise,

14 courts should first look to explicit language of the agreement to

15 determine, if possible, the clear intent of the parties."  Gilliam

16 v. Nevada Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007) (quoting

17 Armistead v. Vernitron Corp., 944 F.2d 1287, 1293 (6th Cir. 1991)).

18 However, the usual rule that ambiguities will be construed in favor

19 of the insured no longer applies when a plan administrator has

20 discretion to interpret the policy.  Ehrensaft v. Dimension Works

21 Inc. Long Term Disability Plan, 33 Fed. Appx. 908, 910 (9th Cir.

22 2002)

23     Under Ninth Circuit law, interpretation of an ERISA insurance

24 policy is "governed by a uniform body of federal law."  Evans v.

25 Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990) (quoting

26 Sampson v. Mutual Benefit Life Ins. Co., 863 F.2d 108, 109-110 (1st

27 Cir. 1988).  ERISA, however, excludes from preemption "any law of

28

1  any State which regulates insurance."  29 U.S.C. § 1144(b)(2)(A);

2  <u>Evans</u>, 916 F.2d at 1440.

3      Kaufman contends that California law requiring that courts

4  deviate from the explicit policy definition of "total disability" in

5  the occupational policy context controls.  <u>See</u> <u>Hangarter v.</u>

6  <u>Provident Life and Acc. Ins. Co.</u>, 373 F.3d 998, 1006 (9th Cir.

7  2004); <u>Erreca v. Western States Life Ins. Co.</u>, 121 P.2d 689 (Cal.

8  1942).  We disagree.  This case is governed by ERISA, and not by

9  California state law.  In an unpublished opinion, the Ninth Circuit

10 affirmed a district court case holding that "Nevada state law does

11 not govern the interpretation of the term 'total disability' in

12 Standard Insurance's long term disability policy."  <u>Buchanan v.</u>

13 <u>Standard Ins. Co.</u>, No. 05-16651, 2007 WL 2988756, at *1 (9th Cir.

14 2007).  Rather, "[t]he interpretation of terms in an ERISA insurance

15 policy is governed by federal common law, not state law."  <u>Id.</u>  We

16 therefore reject Kaufman's contention that California state law

17 interpreting the term "total disability" applies to this case.

18 Furthermore, even if we look to state law to interpret this

19 insurance policy, we would look to Nevada law, which has not adopted

20 <u>Erreca</u>.

21

22          **III. Statute of Limitations**

23      In ERISA actions, the statute of limitations is provided by

24 state law.  <u>Northern California Retail Clerks Unions and Food Emp'rs</u>

25 <u>Joint Pension Trust Fund v. Jumbo Markets, Inc.</u>, 906 F.2d 1371, 1372

26 (9th Cir. 1990).  Under Nevada law, the statute of limitations for

27 actions founded on a written contract is six years.  Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. §

28                              7

11.190(1).   In ERISA underpayment cases, "[t]he statue of limitations did not begin to run until [Plaintiff] had reason to know of the underpayment."   Jumbo Markets, 906 F.2d at 1373.

Unum first broached its statute of limitations defense in its reply (#67) in support of its motion for summary judgment (#55) and as a response (#68) to Kaufman's cross-motion for summary judgment (#64).

Previously, failure to raise the statute of limitations as an affirmative defense was considered waiver of the defense. See, e.g., 389 Orange Street Partners v. Arnold, 179 F.3d 656, 663 n.3 (9th Cir. 1999).   In Randle v. Crawford, the Ninth Circuit considers a waiver of statute of limitations argument.  604 F.3d 1047, 1052 (9th Cir. 2010).   The Ninth Circuit quotes a previous opinion, in which it stated that "[t]here is no dispute that [the] statute of limitations [for habeas petitions] is an affirmative defense. . . . Accordingly, Federal Rules of Civil Procedure 8(c) and 12(b) require that the state raise the statute of limitations in its first responsive pleading to avoid waiving the defense."   Id. (quoting Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005)).   The Ninth Circuit stated that a "pleading" is a complaint or answer, a reply to a counterclaim, an answer to a cross-claim, and a third-party complaint or answer.   In an unpublished opinion, the Ninth Circuit briefly stated that "the DEA litigated [the plaintiff's] claim for roughly seven years to a decision on the merits before the agency, and failed to affirmatively set forth statute of limitations as a defense in its first responsive pleading before the district court as required by Fed. R. Civ. P. 8(c).  As a result, we conclude

1  that the Government waived its timeliness objection." <u>Burnett v.</u>
2  <u>Mukasey</u>, 256 Fed. Appx. 940, 940 (9th Cir. 2007).

3      This strict rule, however, has been liberalized to some extent,
4  at least in cases outside of the habeas context, where the
5  Government may be held to a higher standard.  In <u>Magana v.</u>
6  <u>Commonwealth of the Northern Mariana Islands</u>, the Ninth Circuit
7  stated that "defendants may raise an affirmative defense for the
8  first time in a motion for summary judgment only if the delay does
9  not prejudice the plaintiff."  107 F.3d 1436, 1446 (9th Cir. 1997).
10  In <u>Magana</u>, the Ninth Circuit concluded that there was no prejudice
11  because the defendant raised the statute of limitations defense
12  "three months after filing their answer."  <u>Id.</u>  Our case, however,
13  is distinguishable from <u>Magana</u>.  In <u>Venters v. City of Delphi</u>, the
14  Court of Appeals for the Seventh Circuit considered a case similar
15  to ours.  123 F.3d 956, 968-69 (7th Cir. 1997).  The Seventh Circuit
16  noted that appellate courts no longer find a technical failure to
17  comply with Rule 8(c) fatal.  <u>Id.</u> at 968.  However, the Seventh
18  Circuit noted that in order for Rule 8(c) to not be a nullity, the
19  defense should not be invoked "at the eleventh hour," but should be
20  brought at the earliest possible moment.  <u>Id.</u> at 969.  In <u>Venters</u>,
21  the Seventh Circuit refused to consider the defense, regardless of
22  its actual merits, because the defense was only brought in a reply
23  memorandum to a motion for summary judgment.  <u>Id.</u>  While in our
24  case, Plaintiff was given an opportunity to respond in his reply
25  brief in support of his cross-motion for summary judgment (#64), we
26  find that the great delay in bringing the defense has resulted in
27
28                                    9

1  prejudice that does not warrant forgiving Defendant's failure to
2  assert the defense at an earlier time.

3      We agree with Kaufman that Unum's statute of limitations
4  argument is simply too late.  This action was filed in 2006.  Unum
5  did not plead statute of limitations in its answer (#21) to the
6  second amended complaint (#18), nor did Unum file a separate motion
7  to dismiss, or a motion for summary judgment, based on the statute
8  of limitations.  Discovery was conducted, and the case has now been
9  pending for many years. If we were to decide the case on statute of
10 limitations grounds and conclude that Kaufman's claim is time-
11 barred, many years of costly litigation and discovery will have gone
12 to waste.  We recognize that in some cases, the defense may only
13 become apparent after discovery, and therefore we are not stating
14 that there is a blanket rule that the defense may not be asserted
15 after discovery has been conducted.  Without delving into the
16 merits, however, we note that Unum bases its statute of limitations
17 defense on the basis of a letter that Kaufman sent to Unum,
18 questioning Unum's decisions regarding his benefit calculations.  We
19 do not see how that letter, if it is properly the basis of a statute
20 of limitations defense, could only be discovered four years after
21 the suit was filed, two years after discovery began, and after the
22 parties were prompted to file a pretrial order.  We conclude,
23 therefore, that Unum has waived its statute of limitations defense
24 due to the prejudice Kaufman has suffered in having to confront the
25 defense too late in the time line of the litigation.
26 ////
27 ////
28

10

## IV. Discussion

In order to resolve Unum's motion for summary judgment (#55) and Kaufman's cross-motion for summary judgment (#64), we will consider whether Kaufman's benefits should be reduced by his post-disability earnings, and if so, whether the benefits should be reduced by all his income, or only by his monthly salary, and whether Unum is entitled to repayment of overpaid benefits, if any.

**A. Unum Correctly Determined that Kaufman's Benefits Should Be Reduced By Kaufman's Post-Disability Earnings.**

Unum initially paid out benefits to Kaufman with a reduction for his post-disability income.  Kaufman argues that Unum should not have reduced Kaufman's benefits by his earnings.  Under Kaufman's interpretation of the policy, Kaufman is entitled to the maximum monthly benefit of $15,000 regardless of any other income, as long as Kaufman is considered disabled.  That is, Kaufman contends that the policy protects Kaufman's ability to perform in his regular occupation, and because Kaufman was unable to do so after his disability, he is entitled to full benefits despite his ability to work in other occupations.

The policy applies certain terms differently to the two eligible classes.  The eligible classes are Class 1, which is comprised of physicians, and Class 2, comprised of all other employees.  Kaufman falls under Class 1.  Class 1 employees are eligible for a higher maximum monthly benefit, and are required to make employee contributions, which Class 2 employees are not required to do.

11

The policy sets out a general overview of benefits in its "Amounts of Insurance" section.  That section provides that for Class 1 physicians, the amount of insurance is "60% (benefit percentage) of basic monthly earnings not to exceed the maximum monthly benefit, less other income benefits."  ((Resp. to Mot. for Summary Judgment Ex. 1, at 4 (#63-1).)  Basic monthly earnings refers to the insured's monthly rate of earnings from the employer just prior to the disability date, but "does not include commissions, bonuses, overtime pay and other extra compensation."  (Id. at 5.)  Income benefits are, inter alia, amounts the insured is eligible for under workers' compensation laws or other group insurance plans.  (Id. at 14.)  The section then states "[n]ote: This benefit is subject to reductions for earnings as provided in the Monthly Benefit section of this policy."  (Id. at 4.)  The "Amounts of Insurance" section then caps the maximum monthly benefit for Class 1 physicians at $15,000.  (Id.)

The "Amounts of Insurance" for Class 2 employees contains the same language, down to the note about "reductions for earnings," except that it caps the maximum monthly benefit for Class 2 employees at $5,000.  (Id.)

The "Monthly Benefit" section of the policy states that for Class 1, the monthly benefit is the lesser of sixty percent of the insured's basic monthly earnings or $15,000, minus other income benefits.  (Id. at 13.)  This language corresponds to the language in the "Amounts of Insurance" section prior to the "Note" about reductions for earnings.  The "Monthly Benefit" section, however, does not end there.  It goes on to state that "if the insured is

earning more than 20% of his indexed pre-disability earnings in his regular occupation or another occupation," the monthly benefit will be reduced by the insured's monthly earnings received while disabled.  (Id. at 14.)  This part of the "Monthly Benefit" section corresponds to the "Note" contained in the "Amounts of Insurance" section stating that benefits are subject to reductions for earing as provided in the "Monthly Benefit" section.  While Kaufman argues that this provision applies only to Class 2 employees, to read the policy to apply that language only to Class 2 employees would be to disregard the clear directive in the previous section that benefits are subject to reductions in earnings as provided in the "Monthly Benefit" section.  That directive was clearly stated for both Class 1 and Class 2 beneficiaries.  Our reading of the policy coincides with Unum's initial determination of the amount of benefits to which Kaufman was entitled.  Nor did Kaufman dispute this interpretation of the policy for many years.  Kaufman relies heavily on the fact that the "Monthly Benefit" section uses largely identical language under the headings "Class 1" and "Class 2" concerning the basic calculation of benefits, followed by a calculation of how to reduce benefits by earnings, applicable to both classes.  It is true that Unum could have, perhaps, avoided any litigation on this issue by more clearly labeling the latter part of the "Monthly Benefits" section under a heading of "All Classes."  Unum did not do so, however, we find no difficulty in agreeing with Unum's interpretation of the policy, considering that the "Amounts of Insurance" section clearly gave notice that the "Monthly Benefits"

1  section would set out a calculation for "reductions for earnings"
2  for Class 1 physicians, as well as Class 2 employees.

3       We do not find persuasive Kaufman's argument that the
4  "reductions for earnings" applies to the "less other income
5  benefits" language of the policy.  The "less other income benefits"
6  language is already contained in the basic calculation of damages in
7  "Amounts of Insurance" before the "Note" that the benefit is subject
8  to earnings.  Therefore, the policy indicates that the reductions
9  for earnings is something separate from the reduction for income
10 benefits.  Furthermore, we agree with Unum that income benefits,
11 which are defined as benefits such as workers' compensation or group
12 insurance benefits, are not "earnings."

13      Any doubt about the applicability of the reduction for earnings
14 to Class 1 physicians is removed by examination of the summary plan
15 description ("SPD") provided by Kaufman and cited to by Unum in its
16 motion.  (Ex. 1 (#34-2).)  The SPD is referred to as a "copy of the
17 policy" by Kaufman.  It appears to be a detailed overview of the
18 policy that was provided to Kaufman.  The SPD only overviews the
19 policy as it applies to Class 1 physicians, and contains the
20 language that "[b]ut, if you are earning more than 20% of your
21 indexed pre-disability earnings in your regular occupation or
22 another occupation, then the monthly benefit will be figured as
23 follows . . . ."

24      Nor does the dispute over the use of the term "partial
25 disability" render our above conclusion incorrect.  While the term
26 "partial disability" is only expressly defined under Class 2, the
27 definition of partial disability is included as one form of

28                               14

disability under Class 1.  That is, a Class 1 employee, such as Kaufman, is disabled if he is earning at least twenty percent less per month in his regular occupation or another occupation due to an injury or sickness.  Whether the term "partial disability" is used or not does not appear to make any difference to the monthly benefit calculation, which does not refer to the term "partial disability" to determine any applicable reductions.  The "Monthly Benefit" section merely sets out that benefits will be reduced if the insured is earning a certain amount in his regular occupation or another occupation.  Nothing in that section hinges upon whether an employee is labeled "disabled" or "partially disabled."

We also disagree with Kaufman's argument pertaining to the use of "or" between the alternative definitions of "disabled" for Class 1 employees.  The challenged provision provides that:

> "Disability" and "disabled" mean that because of injury or sickness:
>
> 1. the insured cannot perform each of the material duties of his regular occupation; or
>
> 2. the insured while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
>
> a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and

b. earning currently at least 20% less

per month than his indexed pre-disability

earnings due to that same injury or sickness.

(Resp. to Mot. for Summary Judgment Ex. 1, at 11 (#63-1).)  Kaufman argues that he falls under the first definition of disabled, that is, that "the insured cannot perform each of the material duties of his regular occupation" and therefore necessarily qualified for a full benefit.  Nothing in the policy mandates such a conclusion.  In fact, Kaufman fell under the second definition at times because he was undisputedly working as a medical administrator following his injuries and earning at least 20% less per month than his indexed pre-disability earnings.  Regardless, even were we to find that Kaufman also falls under the first definition, the policy does not state that those falling under the first definition of disability are entitled to maximum monthly benefits regardless of any post-disability earnings.

Finally, while we do apply a heightened skepticism to Unum's decisions in light of its conflict of interest as plan administrator and provider, we note that the relevant standard is still abuse of discretion, albeit not as deferential as in a case where no conflict of interest exists.  Here, however, even if we were to apply a de novo standard of review, we would still agree with Unum's conclusion that Kaufman's benefits should be reduced by his monthly earnings in accordance with the policy.

////

////

16

**B. Unum Did Not Abuse Its Discretion In Deciding that Kaufman's Benefits Should Be Reduced By All His Monthly Earnings.**

While we conclude that Unum correctly applied the terms of the policy when it determined that Kaufman's benefits must be reduced by his post-disability earnings, we must also decide whether Unum abused its discretion in calculating the amount of that reduction. The policy provides that benefits will be reduced by an insured's "monthly earnings" rather than specifying "basic monthly earnings" or all monthly earnings. (Resp. to Mot. for Summary Judgment Ex. 1, at 14 (#63-1).) Kaufman contends that Unum is not entitled to reduce Kaufman's benefits by extra compensation separate from basic monthly earnings. While Unum agrees that the term "basic monthly earnings" is defined to exclude extra compensation such as commissions, bonuses, and overtime pay, Unum claims that the use of "monthly earnings" rather than the more specific "basic monthly earnings" was used purposefully to allow Unum to differentiate between two different circumstances. Specifically, when an insured continues to work in his regular occupation, Unum claims that only his basic monthly earnings would be used to reduce benefits. However, when an insured works in a different occupation after becoming disabled, as in Kaufman's case, all of the insured's compensation is used to determine the reduction amount from the baseline benefits calculation in order to prevent an insured from structuring his income heavily on extra compensation to maximize his disability benefits.

The policy does not define the term "monthly earnings" to either exclude or include bonus compensation such as stock options,

17

commissions, or bonuses.  We conclude that, at the very least, there is an ambiguity as to the definition of "monthly earnings."  The ambiguity is especially salient because under Unum's interpretation, the term "monthly earnings" is defined differently for employees working in their regular occupations and for employees working in different occupations.  This distinction is not made clear by policy language.  In a normal insurance contract case, this ambiguity would be construed in favor of the insured, and Unum would not be entitled to include all of Kaufman's earnings to reduce Kaufman's benefits. See Blankenship v. Liberty Life Assur. Co. of Boston, 486 F.3d 620, 625 (9th Cir. 2007) .  However, "the rule of contra proferentem-under which ambiguous policy language is construed in favor of the insured-does not apply on review for abuse of discretion." Ehrensaft v. Dimension Works Inc. Long Term Disability Plan, 33 Fed. Appx. 908, 910 (9th Cir. 2002).

The disability plan in this case undisputedly grants discretion to Unum to interpret the policy.  While we must consider Unum's conflict of interest in this case as a factor, we are still not at liberty to merely substitute our own judgment for Unum's in interpreting the policy.  See Conkright v. Frommert, 130 S.Ct. 1640, 1646 (2010) ("when the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict.").  The Ninth Circuit recently stated that the test for abuse of discretion is whether "we are left with a definite and firm conviction that a mistake has been committed," although "a higher degree of skepticism is appropriate where the administrator has a conflict of interest." Salomaa v.

18

Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (quoting United States v. Hinkson, 585 F.3d 1247 (9th Cir. 2009) (en banc)).

When a conflict of interest exists, the Ninth Circuit has held that a court must consider whether the conflict influenced the decision by the plan.  Lang v. Long Term Disability Plan, 125 F.3d 794, 798 (9th Cir. 1997).  The Ninth Circuit explained that a plan may show that the conflict of interest did not affect its decision by providing evidence that the "decision in fact benefitted the plan as a whole and therefore the rest of the beneficiaries under the plan."  Id.  Unum asserts that its interpretation of the policy is reasonable, and may not be disturbed upon review unless we find the interpretation unreasonable.  Unum is correct that we must find Unum's interpretation unreasonable in order to grant Kaufman's claim that only his basic monthly earnings may be used to calculate a reduction in benefits.

The policy is of little help in this case.  Unum could have used the term "basic monthly earnings" which was defined to exclude bonus compensation, but did not, which may indicate that all monthly earnings were meant to be used in the calculation.  However, that is not Unum's interpretation of the policy.  Unum contends that the term "monthly earnings" is construed separately based on whether the insured is working for the same, or for a different employer.  But Unum failed to specifically provide guidance in the policy language that benefits will be reduced differently if the insured changes employers.  Unum's reading of the policy would be stronger if Unum

used all monthly earnings regardless of whether the insured works for the same, or a different employer.

However, Unum asserts that it has good reason to interpret the policy as it does.  The reason is that when an insured continues to work for the same employer, Unum may be reasonably assured that the insured continues to be paid in a similar manner to that which had been used pre-disability.  When an insured works for a different employer, however, Unum argues that the insured may be in a position to structure his or her income in a way such that "basic monthly earnings" is low, but bonus compensation is high.  If Unum were only to reduce benefits by basic monthly earnings in such a case, the insured would be entitled to a windfall, because the insured would be earning extra income while being entitled to the same benefits as an insured with little to no bonus compensation.

While we find that the policy language is unnecessarily ambiguous, and Unum's interpretation only exacerbates that ambiguity, we cannot find that Unum's apparent conflict of interest led to an unreasonable reading of the policy.  The policy does not indicate whether basic monthly earnings or all monthly earnings should be used to calculate reduction of benefits.  The fact that the policy did not use the defined term "basic monthly earnings" lends some credence to Unum's claim that Kaufman's benefits must be reduced by all his monthly earnings.  Furthermore, Unum's interpretation, while somewhat tortuous, is in accordance with the Plan's goals of compensating employees who become disabled, rather than rewarding or creating a windfall for employees who are in the position to dictate the structure of their compensation, or to

20

1  otherwise manipulate the Plan in order to receive more benefits than
2  an equivalently-placed insured might receive.  We conclude,
3  therefore, that Unum is entitled to reduce Kaufman's benefits by all
4  his monthly earnings, rather than merely his basic monthly earnings.

5      **C. Unum is Not Entitled to Repayment.**

6      Unum's counterclaim alleges that Unum overpaid Kaufman, and
7  that Unum is entitled to reimbursement of the overpayment.  Kaufman
8  asserts that Unum has no right to repayment.  Under 29 U.S.C. §
9  1132(a)(3), ERISA authorizes civil actions "to obtain other
10 appropriate equitable relief" to enforce ERISA or to redress any
11 violation of ERISA.

12     In Sereboff v. Mid Atlantic Medical Services, the Supreme Court
13 held that the plan has a right to reimbursement under 29 U.S.C. §
14 1132(a)(3) when the plan contains a provision requiring repayment.
15 547 U.S. 356, 360 (2006).  In our case, however, the Plan only
16 refers to repayment of overpayment caused by awards received under
17 the United States Social Security Act, the Canada Pension Plan, or
18 the Quebec Pension Plan, or similar plans or acts.  ((Resp. to Mot.
19 for Summary Judgment Ex. 1, at 15 (#63-1).)  The Plan has no express
20 provision providing for repayment in the case that Unum
21 miscalculates the benefits due to an insured.  Other courts have
22 refused to extend Sereboff to cases in which there is no express
23 agreement to repay; rather, the courts hold that the strict tracing
24 rules found in Great-West Life & Annuity Ins. Co. v. Knudson, 534
25 U.S. 204, 215 (2002), prohibit plans from recovering overpayment
26 unless the overpayment could be traced to particular funds or
27 property in the defendant's possession.  See, e.g., Sivalingam v.

28                                    21

Unum Life Ins. Co. of America, 2011 WL 1584055 *11 (E.D. Pa. April 26, 2011); Fier v. Unum Life Ins. Co. of America, 2009 WL 3644187 *14 (D. Nev. November 3, 2009). Because Unum cannot impose an equitable lien under a theory of restitution without providing evidence of "particular funds or property" in Kaufman's possession, we hold that Unum is not entitled to repayment of any overpayment that Kaufman may have received under Unum's calculation of damages.

Unum further argues that it may recover its overpayment under state law, if ERISA does not provide a remedy. In Cooperative Ben Administrators Inc. v. Ogden, the Court of Appeals for the Fifth Circuit held that "ERISA plan fiduciaries do not have a federal common law right to sue a beneficiary for legal (as distinct from equitable) relief on a theory of unjust enrichment or restitution" because Congress "specifically contemplated the possibility of extending to plan fiduciaries a right to sue a participant for money damages and chose instead to limit fiduciaries' remedies to those typically available in equity." 367 F.3d 323, 332, 336 (5th Cir. 2004).

## IV. Conclusion

Under the policy, Unum is entitled to reduce Kaufman's benefits by the amount of all his monthly earnings. Unum is not entitled, however, to repayment of any overpayment made to Kaufman because there was no express agreement to repay, and Unum has not provided any evidence of particular funds or property to which the overpayment can be traced.

1    **IT IS, THEREFORE, HEREBY ORDERED** that Unum's motion for summary

2    judgment (#55) is **GRANTED IN PART AND DENIED IN PART** on the basis

3    that while Unum is entitled to summary judgment on Kaufman's claims

4    for declaratory relief and breach of the employee benefit plan, Unum

5    is not entitled to summary judgment on its counterclaims for

6    equitable restitution pursuant to 29 U.S.C. § 1132(a)(3), unjust

7    enrichment, and constructive trust.

8

9    **IT IS FURTHER ORDERED** that Kaufman's cross-motion for summary

10   judgment (#64) is **GRANTED IN PART AND DENIED IN PART** on the basis

11   that while Kaufman is entitled to summary judgment on Unum's

12   counterclaims, he is not entitled to summary judgment on Kaufman's

13   claims.

14

15   The Clerk shall enter judgment accordingly.

16

17   DATED: July 18, 2011.

18                                         _Edward C. Reed._
                                           _____
19                                         UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28                                      23